# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 14-2040 (JS) |
| MARCUS RUTLING | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __04/08/2013 through 07/08/2014__ in the county of __Camden__ in the _____ District of __New Jersey__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371, 18 U.S.C. § 922(g), and 18 U.S.C. § 2 | See Attachment A |

This criminal complaint is based on these facts:
See Attachment B

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Renee Repasky, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/05/2014__

_____
*Judge's signature*

City and state: __Camden, New Jersey__      Hon. Joel Schneider, U.S. Magistrate Judge
*Printed name and title*

CONTENTS APPROVED

UNITED STATES ATTORNEY

By: _____
Matthew T. Smith
Assistant U.S. Attorney

Date: August 5, 2014

## ATTACHMENT A

## COUNT ONE

From in or about April 8, 2013, through on or about July 8, 2014, in Camden County, in the District of New Jersey, and elsewhere, defendants,

**Shawn TRIBBETT (a/k/a "Marsh" a/k/a "Mello"),
Joseph RUTLING (a/k/a "Weezy"),
Marcus RUTLING (a/k/a "Fresh"),
Anthony GILMORE (a/k/a "Tone"), and
Katelynn SCHIPPNICK,**

did knowingly and intentionally conspire and agree with each other and with others to engage in the business of dealing in firearms, while not being federally-licensed dealers, importers, or manufacturers of firearms, contrary to Title 18, United States Code, Section 922(a)(1)(A).

In violation of Title 18, United States Code, Section 371.

## OVERT ACTS

In furtherance of this conspiracy and to effect its object, the following overt act was committed in the District of New Jersey and elsewhere:

1. On or about July 19, 2013, defendants JOSEPH RUTLING and MARCUS RUTLING sold an individual two firearms and ammunition during a meeting at 1055 Princess Avenue, Camden, New Jersey.

## COUNT TWO

On or about January 2, 2014, in Camden County, in the District of New Jersey, and elsewhere, the defendant,

**Marcus RUTLING (a/k/a "Fresh"),**

having been convicted of a crime punishable by imprisonment for a term exceeding one year in a court of the State of New Jersey, did knowingly possess in and affecting commerce a firearm, namely, a Raven Arms, model P25, 25 caliber pistol, bearing serial number 372880.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT THREE

On or about April 9, 2014, in Camden County, in the District of New Jersey, and elsewhere, the defendant,

### Joseph RUTLING (a/k/a "Weezy"),

having been convicted of a crime punishable by imprisonment for a term exceeding one year in a court of the State of New Jersey, did knowingly possess in and affecting commerce a firearm, namely, FIE, model Titan Tiger, 38 caliber revolver, bearing serial number N402342.

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT FOUR

On or about April 11, 2014, in Camden County, in the District of New Jersey, and elsewhere, defendant,

### Anthony GILMORE (a/k/a "Tone"),

having been convicted of a crime punishable by imprisonment for a term exceeding one year in a court of the State of New Jersey, did knowingly possess in and affecting commerce a firearm, namely, a Hi Point, model C9 9 millimeter pistol, bearing serial number 808132.

In violation of Title 18, United States Code, Section 922(g)(1), and Title 18, United States Code, Section 2.

## ATTACHMENT B

## AFFIDAVIT

I, Renee Repasky (the "affiant"), state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter, "ATF"). The information set forth in this complaint is based on interviews with law enforcement, a review of ATF records and reports, and debriefing of other witnesses. Since this Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a criminal complaint, I have not included each and every fact known by me concerning this investigation. In addition, all of the conversations included in this affidavit are a summary of the conversation and not a verbatim account of the conversation.

1. I have been employed as a Special Agent with ATF since 2003, and I am currently assigned to the ATF Camden Field Office, Newark Division where I investigate, gather evidence, and make arrests for violations of Title 21 and Title 18 of the United States Code and other federal criminal laws. I have participated in and received training as an ATF Special Agent in conducting investigations into violations of the federal gun laws. Through the course of my career, I have participated in well over 100 gun and gun-trafficking investigations utilizing investigative techniques such as interviewing witnesses, conducting physical surveillance, electronic surveillance to include wire taps, the use of confidential informants and sources of information, and conducting and participating in searches based on search warrants.

2. In or about March of 2013, an ATF confidential source of information (hereinafter, "CS") told law enforcement officers that CS knew of an individual by the name of Shawn Tribbett (also known as "Marsh" and "Mellow"), who was distributing firearms, as well as quantities of marijuana, cocaine and prescription legend drugs in the southern New Jersey area.[1] CS relayed that, in conversations with Tribbett, Tribbett offered to sell CS both prescription legend drugs and firearms.

3. Beginning in or about April of 2013 and continuing through July of 2014, CS worked at the direction of law enforcement officers and purchased over twenty (20) firearms directly from Shawn Tribbett, Joseph Rutling, Marcus

---

[1] CS is a prior two-time convicted felon, who is on probation for a 2010 conviction for theft of movable property. CS, however, has cooperated with law enforcement in the past and has proved reliable. Moreover, information provided by CS in the past with respect to this investigation and a related firearms-trafficking investigation has also proved reliable.

1

Rutling, and/or Anthony Gilmore. Of the twenty firearms purchased, two had either completely or partially-obliterated serial numbers and at least one firearm was reported stolen. The investigation revealed that Shawn Tribbett, Joseph Rutling, Marcus Rutling, Anthony Gilmore, and Katelynn Schippnick had conspired and agreed with each other and with others to: (a) obtain firearms in the South Carolina-area; (b) transport the firearms from South Carolina to New Jersey; and (c) arrange for the firearms to be sold to CS. In general, Tribbett and Schippnick served to broker these transactions between Joseph Rutling, Marcus Rutling, and/or Gilmore (as the sellers) and CS (as the buyer). None of these individuals, (Tribbett, Joseph Rutling, Marcus Rutling, Gilmore, or Schippnick) are or were federally-licensed dealers, importers, or manufacturers of firearms and none were authorized to engage in the business of dealing in firearms. In fact, Tribbett, Joseph Rutling, Marcus Rutling, and Gilmore are all previously-convicted felons and prohibited from possessing a firearm under federal law.

4. On or about April 8, 2013, at the direction of law enforcement officers, CS purchased three firearms from Shawn Tribbett and his associate, Joseph Rutling (a/k/a "Weezy"). Two days prior to this purchase, CS spoke with Tribbett and negotiated the purchase of two firearms for $900. According to Tribbett, it was Tribbett's associate that had the firearms. CS drove with Tribbett to a residence located at 1055 Princess Avenue, Camden, New Jersey. Once at the residence, Tribbett exited CS's vehicle and entered the residence to meet with "Weezy" (later identified as Joseph Rutling). A short time later, Tribbett exited the residence and entered CS's vehicle. Once inside of the vehicle, Tribbett removed an Iberia, model JCP40, 40 caliber pistol with serial number X742181 from his waistband and handed it to CS. CS then stated that he wanted to also purchase the 25 caliber handgun that was for sale. Tribbett then exited the vehicle and re-entered the residence. While Tribbett was inside the residence, a black male who identified himself as "Weezy's" brother (later identified as Marcus Rutling) arrived on the scene and negotiated the sale of a shotgun with CS. Tribbett returned to the vehicle with a Lorcin, model LT25, 25 caliber pistol bearing serial number ALT275433 and provided it to CS. CS then told Tribbett, CS was interested in purchasing the shotgun offered for sale by Marcus Rutling. Tribbett exited the vehicle and re-entered the residence again. When Tribbett returned to the car, he had with him a short-barreled Savage model 67H, 12-gauge shotgun with no serial number concealed in the leg of his pants. CS paid Tribbett a total of $1,350 of pre-recorded ATF funds ($600 for the purchase of the Iberia 40 caliber pistol, $300 for the Lorcin 25 caliber pistol, $400 for the short-barreled Savage shotgun, and $50 to Tribbett for arranging the purchases). During the car ride back to Tribbett's house, Tribbett explained how the firearms were trafficked from South Carolina to New Jersey on a weekly basis by Joseph and Marcus Rutling. This meeting was electronically recorded.

5. On or about April 10, 2013, law enforcement officers conducted a controlled purchase of a firearm utilizing CS. CS drove to Tribbett's residence located at 25 Clementon Avenue, Clementon, New Jersey. Tribbett approached the CS's vehicle, opened the rear window of the hatchback and placed the firearm into the right compartment of the vehicle. Tribbett then got in to the front passenger seat and engaged the CS in a conversation relating to the firearm and cocaine. CS paid Tribbett $300 of pre-recorded ATF funds for one Sundance model BOA, 25 caliber pistol bearing serial number 059321. Tribbett also told CS that Tribbett knew about a shipment coming "up" in a few days. Tribbett also mentioned he was talking to a guy's "brother" who was from "North Carolina, South Carolina, where we get them from" and the two discussed future shipments of guns. I know from my experience and this investigation that Marcus Rutling is from South Carolina. As the conversation continued, CS asked Tribbett if he had any cocaine in his possession. Tribbett pulled out 15 bags of suspected cocaine from his pocket. CS then paid Tribbett $300 of pre-recorded ATF funds for the suspected cocaine. This meeting was electronically recorded.

6. On or about April 24, 2013, law enforcement officers learned from CS that CS had contacted Tribbett. In summary and in part, Tribbett told CS that Joseph Rutling had a Smith & Wesson 40 caliber handgun for sale, having just returned to New Jersey from South Carolina. In a text message to CS, Tribbett offered the firearm for sale for $1,200. In a later telephone call, Tribbett and CS negotiated the purchase of the firearm for $900. Two days later, on or about April 26, 2013, law enforcement officers conducted a controlled purchase utilizing CS. CS drove to the vicinity of 25 Clementon Avenue, Clementon, New Jersey to meet with Tribbett and Joseph Rutling. When CS pulled up to the location, Tribbett and Joseph Rutling were sitting in Tribbett's vehicle. There was also a 1993 green Ford Escort bearing New Jersey registration D86CJL parked next to Tribbett's vehicle. This vehicle was registered to Katelynn Schippnick.[2] Tribbett exited his vehicle and entered the CS's vehicle. Tribbett handed the CS one Smith and Wesson, model SW40VE, 40 caliber pistol bearing serial number DST5207 and the CS paid $900 to Tribbett.[3] After Tribbett took the $900 of pre-recorded ATF funds, he told CS that he was still owed $50 for arranging the purchase. Tribbett then exited the CS's vehicle and walked back to his own vehicle. CS then observed Tribbett hand Joseph Rutling the money CS had just provided to Tribbett. A short time later, both Tribbett and Joseph Rutling entered CS's vehicle and the three men

---

[2] During the course of the investigation, law enforcement officers learned that Schippnick is the girlfriend of Joseph Rutling.

[3] This firearm was reported stolen on January 10, 2013 during a burglary in South Carolina.

3

engaged in a conversation about the purchase of more firearms. During the conversation, Joseph Rutling told CS, in substance and in part, that Rutling expected a large quantity of firearms to arrive in New Jersey the following weekend as he travels to South Carolina on weekends to obtain firearms. When the conversation was complete, Rutling exited the vehicle and left the area. Tribbett remained in CS's vehicle and CS paid Tribbett $50 for arranging the purchase of the firearm. This meeting was electronically recorded.

7. After a series of phone calls and text messages between CS and Tribbett, on or about May 20, 2013, law enforcement officers conducted a controlled purchase of a firearm utilizing CS. CS picked up both Tribbett and Joseph Rutling and drove them to Joseph Rutling's residence located at 1055 Princess Ave, Camden, New Jersey. Once inside of the residence, Rutling retrieved an assault rifle-style firearm of unknown make or model with serial number 88662 and handed it to Tribbett, who then handed it to CS. Rutling also provided the CS with eight (8) boxes of 12-gauge ammunition and one (1) box of 7.62x39mm ammunition. CS paid Rutling $1,200 of pre-recorded ATF funds for the rifle and ammunition. During the meeting, Rutling mentioned to CS that his source of firearms and ammunition was his brother in South Carolina. Rutling later explained that his brother (Marcus Rutling) typically sends Joseph Rutling text message photographs and/or videos of the firearms to Joseph Rutling's cellular telephone but that Joseph Rutling deletes the photographs after viewing them. While driving back to Tribbett's residence, CS and Tribbett discussed the sale of prescription pain pills and cocaine. CS then purchased three small bags of suspected cocaine and two prescription pain pills from Tribbett for $60 of pre-recorded ATF funds. CS also paid Tribbett $50 of pre-recorded ATF funds for arranging the purchase of the rifle and ammunition. This meeting was electronically recorded.

8. After telephone contact and contact via social networking websites with Tribbett, on or about June 27, 2013, law enforcement officers conducted a controlled purchase of a firearm utilizing CS. The CS picked up both Tribbett and Joseph Rutling and drove to a residence located at 20 West Hodges Avenue in Lawnside, New Jersey. Once they arrived at the residence, Rutling entered the residence and retrieved a short barreled Savage, model 67, 20 gauge shotgun with serial number B334197. Rutling provided the shotgun to CS in exchange for $1,200 of pre-recorded ATF funds. CS then purchased four bags of suspected cocaine from Tribbett for $50 of pre-recorded ATF funds. Tribbett was paid $50 from both CS and Rutling for arranging the purchase of the firearm. This meeting was electronically recorded.

9. In late June, 2013, CS communicated by text message with Joseph Rutling regarding the purchase of firearms. On July 1, 2013, CS called Joseph Rutling to set up the purchase of firearms for the following day. On or about

4

July 2, 2013, law enforcement officers conducted a controlled purchase of a firearm utilizing CS. CS met with Joseph Rutling in front of 20 West Hodges Avenue, Lawnside, New Jersey. Rutling then entered the residence alone and retrieved a Savage, model 30F, 12-gauge shotgun with no serial number and five rounds of 12-gauge ammunition. During the conversation, Joseph Rutling told CS that Rutling was scheduled to travel to South Carolina to obtain additional firearms. CS paid Rutling $900 of pre-recorded ATF funds. This meeting was electronically recorded.

10. On or about July 19, 2013, law enforcement officers conducted a controlled purchase utilizing CS. CS drove to 1055 Princess Avenue, Camden, New Jersey and met with Joseph Rutling and Marcus Rutling. Once inside the residence, Joseph Rutling handed CS: (a) one Maverick Arms, model 88, 12 gauge shotgun bearing serial number MV87501E; (b) one round of 12-gauge ammunition; (c) one Smith and Wesson, model 22A-1, 22 caliber pistol bearing serial number UBP6587; and (d) ten rounds of 22 caliber ammunition in exchange for $1,200 of pre-recorded ATF funds. CS then engaged both Joseph Rutling and Marcus Rutling in conversation regarding the sale of firearms. According to CS, Marcus and Joseph Rutling indicated they both transport the firearms by way of Amtrak train to New Jersey where they are resold for profit. Marcus Rutling then explained that his associates were planning to obtain additional firearms and would contact Marcus once the firearms were in their possession. At the end of the conversation, Joseph Rutling assisted CS by carrying the firearms and ammunition out of the car. Joseph Rutling placed an additional box containing forty (40) rounds of 22 caliber ammunition inside of CS's trunk. This meeting was electronically recorded.

11. After a series of telephone communications, on or about July 29, 2013, law enforcement officers conducted a controlled purchase of a firearm utilizing CS. CS drove to 20 West Hodges Avenue, Lawnside, New Jersey to meet with Joseph Rutling. CS witnessed Joseph Rutling arrive and then enter the residence. A short time later, Joseph Rutling entered the CS's vehicle and provided a Raven Arms, model MP25, 25 caliber pistol with serial number 1419623 to CS in exchange for $350 of pre-recorded ATF funds. CS questioned Joseph Rutling about whether Rutling's brother (Marcus Rutling) was able to obtain additional firearms as the three men had previously discussed. In response, Joseph Rutling stated, in substance and in part, that he had recently purchased a car and planned to coordinate delivery of the car to his brother in South Carolina with an acquisition of firearms. This meeting was electronically recorded.

12. In late December 2013, CS had contact with Schippnick via Facebook. In short, Schippnick informed CS that she was "going b[e] out there with them toys Dec. 26th". I know from my training and experience that the

term "toys" is a commonly used slang term for firearms. Later Schippnick connected CS with Marcus Rutling by directing CS to contact Marcus Rutling through Joseph Rutling's Facebook page. During the communications between CS and Marcus Rutling on the social networking website, Marcus Rutling told CS that Rutling had "a 9, a deuce 5, and to dos dos." I know from my training and experience and from the context of these communications, that Marcus Rutling was referring to a nine millimeter pistol ("a 9"), a 25 caliber pistol ("a deuce 5") and two 22 caliber firearms ("to dos dos"). During subsequent telephone conversations between CS and Marcus Rutling, the two agreed that the purchase price would be $1,200.

   13. On or about January 2, 2014, law enforcement officers conducted a controlled purchase utilizing CS. CS drove to a 7-11 convenience store located at 625 North White Horse Pike, Magnolia, New Jersey to meet with Marcus Rutling. Marcus Rutling arrived a few minutes later and entered the CS's vehicle. Marcus Rutling then instructed CS to drive to 35 Charman Avenue, Lawnside, New Jersey. During the car ride to Charman Avenue, Marcus Rutling asked if CS was interested in purchasing ballistic vests and CS responded in the affirmative. Marcus Rutling then stated the vests were currently located in Camden. Once they arrived at 35 Charman Avenue, an individual, who was subsequently identified as Anthony Gilmore (a/k/a "Tone"), exited the residence carrying a large black bag. Gilmore placed the bag in the trunk of CS's vehicle. The bag contained the following: (a) one Raven Arms, model P25, 25 caliber pistol with serial number 372880; (b) one Lorcin model L9, 9mm pistol with obliterated serial number; (c) one Marlin, model 60, 22 caliber rifle with serial number 27291297; and (d) one Savage, model Mark II, 22 caliber rifle with serial number 0603525. CS paid Marcus Rutling $1,200 in pre-recorded ATF funds for the purchase of these four firearms. Following the meeting between CS and Marcus Rutling, Rutling was arrested by local law enforcement authorities for outstanding warrants in New Jersey and South Carolina. A law enforcement officer who searched the location near where Rutling was arrested found $1,100 in cash which matched the pre-recorded ATF funds provided to CS for the purchase of the firearms. This meeting was electronically recorded.

   14. On or about January 3, 2014, CS had contact with Katelynn Schippnick through Facebook. The CS informed Schippnick CS was trying to contact Marcus Rutling in reference to the ballistic vests he previously offered to sell CS. Schippnick told CS that Marcus Rutling had been arrested the previous day. Schippnick told CS that she would contact Anthony Gilmore in reference to the ballistic vests for sale. Specifically, Schippnick told CS that Marcus Rutling's "cousin still has 2 things and he may know where the vest [sic] are at." I know from my training and experience and the context of these conversations that the term "things" is commonly used as slang for "firearms." When asked by CS to which cousin Schippnick was referring, Schippnick told CS

6

that the cousin was "Tone" (Gilmore). Schippnick then continued, stating that "anything else we have or get for now will go through [Gilmore]." Later in 2014, Joseph Rutling communicated with CS through Facebook in which he told CS that "Tone" was in possession of one of the two ballistic vests. CS then communicated with Gilmore who told CS the purchase price of the ballistic vests.

15. On or about March 7, 2014, the CS purchased one Galls LT ballistic vest from Gilmore for $250 of pre-recorded ATF funds in front of 76 LaPierre Avenue, Lawnside, New Jersey. During this meeting, CS and Tone discussed the January 2, 2014 arrest of Marcus Rutling. Specifically, Gilmore stated that Rutling had hidden money in the bushes somewhere in the area near where he was arrested. This meeting was electronically recorded.

16. On or about April 7, 2014, CS spoke by telephone with Joseph Rutling and the two men arranged a meeting where Joseph Rutling would sell three firearms to CS. On or about April 9, 2014, law enforcement officers conducted a controlled purchase of firearms utilizing CS. CS met with Joseph Rutling at a public park located on Ashland Avenue in Lawnside, New Jersey. During the meeting, Rutling took a blue Nike bag out of his vehicle and placed it into the trunk of the CS's vehicle. The bag contained the following: (a) one Ishmash, model Spartan SPR453, 12-gauge short barreled shot gun with an obliterated serial number; (b) one FIE, model Titan Tiger, 38 caliber revolver with serial number N402342; (c) thirteen rounds of 12-gauge ammunition; and (d) one Mossberg, model 500A, 12 gauge shotgun with serial number L443282. CS paid Joseph Rutling $1,500 of pre-recorded ATF funds for the firearms and ammunition. This meeting was electronically recorded.

17. On or about April 11, 2014, law enforcement officers conducted a controlled purchase using CS. CS was contacted by Katelynn Schippnick through Facebook, and Shippnick told CS to call her at 864-321-8995. During a non-recorded telephone conversation, Schippnick told CS that Joseph Rutling was arrested and she would sell a 9mm firearm to the CS. Schippnick told CS that Gilmore was in possession of the 9mm firearm and the CS should contact Gilmore directly. CS made contact with Gilmore and they agreed to meet at 76 LaPierre Avenue, Lawnside, New Jersey. Gilmore was standing in the door way as the CS pulled up to the residence. As the CS was at the residence, a second vehicle pulled up and Schippnick and two others exited the vehicle. Upon approaching Gilmore at the residence, Gilmore handed CS a Hi-point, model C9, 9mm pistol with serial number 808132 and eight rounds of 9 mm ammunition that Gilmore had in his possession. CS handed Gilmore $550 of pre-recorded ATF funds for the firearm and ammunition. CS and Gilmore had a conversation with Schippnick and others after the purchase was completed. CS witnessed Gilmore hand Schippnick the $550 of pre-recorded ATF funds from the sale of the firearm. Schippnick later stated, in substance and in part, that once she

goes back to South Carolina, she will recruit someone to purchase firearms on her behalf and she will transport them back to New Jersey.

18. After communication between Gilmore and CS, on or about June 3, 2014, law enforcement officers conducted a controlled purchase utilizing CS. CS met with Gilmore at 76 LaPierre Avenue, Lawnside, New Jersey. Gilmore handed CS one Maadi, model Helwan, 9mm pistol and the CS paid Gilmore $500 of ATF pre-recorded funds for the firearm. This meeting was electronically recorded.

19. After communication between Gilmore and CS about Gilmore possessing a "sawed-off" shotgun for sale, on or about July 8, 2014, law enforcement officers conducted a controlled purchase utilizing CS. CS met with Gilmore at 76 LaPierre Avenue, Lawnside, New Jersey. Gilmore gave CS one short barreled Winchester, model 370, 12-gauge shot gun, and five rounds of 12 gauge ammunition in exchange for $700 of pre-recorded ATF funds. After delivering the gun to CS, Gilmore told CS that Gilmore had "wiped" the firearm clean prior to proving it to CS. This meeting was electronically recorded.

20. The investigation has revealed that neither Tribbett, Joseph Rutling, Marcus Rutling, Gilmore, nor Schippnick are (and between April 8, 2013 and July 8, 2014, were)   federally licensed dealers, licensed importers, or licensed manufacturers of firearms.

21. I am an ATF Interstate Nexus Expert and I have determined that none of firearms mentioned in the paragraphs above were manufactured in the State of New Jersey and therefore, must have necessarily travelled in interstate commerce to be present in New Jersey.

22. I have reviewed criminal history records for Shawn Tribbett. Tribbett was convicted of a felony in 2003 (distribution of controlled dangerous substance in New Jersey Superior Court (Camden County)).

23. I have reviewed criminal history records for Joseph Rutling. Rutling was convicted of burglary in or about 2011 in South Carolina and unlawful possession of a weapon (in New Jersey Superior Court (Camden County)), among others.

24. I have reviewed criminal history records for Marcus Rutling. Rutling was convicted of possession with the intent to distribute controlled dangerous substance (methamphetamine) in 2003 (in New Jersey Superior Court (Camden County)), Possession with intent to distribute controlled dangerous substance (cocaine) in 2004 (in New Jersey Superior Court (Camden County)), and burglary in 2011 (in South Carolina), among others.

25. I have reviewed criminal history records for Anthony Gilmore. Gilmore was convicted of unlawful possession of a weapon (in New Jersey Superior Court (Camden County)).

26. On May 19, 2014, I received results of a State of New Jersey records query for Tribbett, Marcus Rutling, Joseph Rutling, and Gilmore from Extradition Secretary and Executive Clemency Assistant, Susan Meier. The results of that query reflect that Tribbett, Marcus Rutling, Joseph Rutling, and Gilmore have never applied for, nor been granted a pardon from the Governor of the State of New Jersey.

27. On May 28, 2014, I received results of a State of South Carolina records query for Marcus Rutling and Joseph Rutling from the Department of Probation, Parole and Pardon Services. The records administrator, Julie Dunn, stated neither Rutling received pardons in the State of South Carolina.